IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BENJAMIN PATTI, | : |
| Plaintiff, | : |
| v. | Civil No. 22-cv-6365 (RBK/MJS) |
| ASSISTANT CHIEF ALEXSANDRO IBARRONDO, *et al.*, | **OPINION** |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the motion for partial dismissal of Plaintiff Benjamin Patti's Complaint by Defendants Camden County, Camden County Police Department (CCPD), Chief Gabriel Rodriguez, Assistant Chief Alexsandro Ibarrondo, Deputy Chief Janell Simpson, Deputy Chief Michael Shomo, Captain Anthony Moffa, Captain Kevin Lutz, Lieutenant Curtis May, Lieutenant Victor Diaz, and Captain Richard Burns (collectively, "Defendants"). (ECF No. 16 ("Mot.")). Plaintiff asserts federal law claims under the Uniformed Services Employment and Reemployment Rights Act (USERRA) and state law claims under the New Jersey Law Against Discrimination (NJLAD) and the Conscientious Employee Protection Act (CEPA). For the reasons expressed in this Opinion, we will dismiss all claims against Defendant Simpson; the USERRA claim as to Defendants Rodriguez, Ibarrondo, Shomo, Moffa, Lutz, May, Diaz and Burns (hereinafter, "the individual defendants"); the NJLAD claim as to Defendants Rodriguez, Ibarrondo, Shomo, May, Diaz, and Burns; and the CEPA claim against all defendants.

1

## I.  BACKGROUND

This is an employment discrimination suit filed by Plaintiff Benjamin Patti against his current employer, supervisors, and fellow employees of Camden County and CCPD. (ECF No. 9 ("Compl.")). Plaintiff alleges that Defendants harassed and discriminated against him due to his military service in the New Jersey Army National Guard. (Compl. at ¶ 9). Plaintiff enlisted in the New Jersey National Guard in December 2012. (*Id.* at ¶ 6). Plaintiff is a First Sergeant in the Army National Guard and has received orders to attend military assignments and training on multiple occasions between 2012 and the present. (*Id.* at ¶¶ 6–7). Plaintiff began working as a Patrol Officer for the CCPD on March 25, 2013. (*Id.* at ¶ 34). He was promoted to Acting Sergeant on January 21, 2016 and was promoted to the position of Sergeant on December 18, 2016 (*Id.* at ¶¶ 37–40). Around October of 2018, Plaintiff took the Civil Service Test for the position of Lieutenant and received the twelfth highest score on the test. (*Id.* at ¶¶ 41–42).

In March of 2020, while Plaintiff was serving military orders, Captain Moffa called him and asked him to return early from military orders in exchange for a promotion to the rank of lieutenant. (*Id.* at ¶¶ 45, 47). Plaintiff informed Captain Moffa that he could not leave his orders issued pursuant to federal authority. (*Id.* at ¶¶ 48–49). Plaintiff alleges that in retaliation for his refusal to leave early, Defendants Camden County and CCPD intentionally delayed his promotion to Lieutenant for three additional months. (*Id.* at ¶ 50). Plaintiff was promoted on June 1, 2020, although there were openings in the department since March 2019. (*Id.* at ¶¶ 41, 50–51).

In May 2021, an assailant fired a gun at Plaintiff's home. (*Id.* at ¶ 55). Plaintiff was unable to work his shift because the police that responded to the incident required his assistance in the ensuing investigation. (*Id.* at ¶ 60). Plaintiff's supervisor, Captain James, informed him

that the Camden Metro Administration would require him to use a vacation day to cover the missed time related to the incident. (*Id.* at ¶ 61). Plaintiff also alleges that Chief Rodriguez did not inquire about his well-being until weeks after the shooting incident. (*Id.* at ¶ 63).

After Plaintiff informed Camden Metro that he had to fulfill military orders from October 2021 to December 2021, Defendants retaliated against Plaintiff by assigning him to nightshifts. (*Id.* at ¶¶ 69–70). A lieutenant of Plaintiff's standing was typically allowed to choose the dayshift, and Plaintiff alleges that other lieutenants with less seniority had received the preferred dayshifts. (*Id.* at ¶¶ 68–71). Prior to Plaintiff's departure for orders on October 1, 2021, Captain Lutz remarked to Plaintiff that "your time out on Orders with the Army is causing you problems." (*Id.* at ¶ 72). Plaintiff returned to work a day early from orders in fear of retaliation. (*Id.* at ¶ 77).

On February 9, 2022, Plaintiff requested a shift change because he had to report to Military Drill weekend. (*Id.* at ¶ 78). Plaintiff had notified CCPD of his required attendance at Military Drill weekend six months prior. (*Id.*). Captain Lutz denied the request and stated, "No, I can't do that, the military is just too much." (*Id.* at ¶ 79). He instead suggested that Plaintiff use personal time to cover the shift. (*Id.* at ¶ 81).

On June 8, 2022, Plaintiff was promoted to captain in a meeting attended by Deputy Chief Shomo, Captain Simpson, and Chief Rodriguez. (*Id.* at ¶ 139). In this meeting, the facilitators told Plaintiff that he would be performing the roles of Operations Captain and Lieutenant concurrently, unlike any other newly promoted captain. (*Id.* at ¶ 143). Plaintiff remained on night shifts in his role as a Lieutenant and fulfilled his new daytime duties as an Operations Captain. (*Id.* at ¶¶ 146–47). Plaintiff's concurrent roles created several schedule conflicts that allowed him no more than three hours of sleep each day. (*Id.* at ¶ 148).

In June of 2022, a sergeant informed Plaintiff that he and others overheard a member of Camden Metro Police Human Resources say to Human Resources Supervisor, Anthony Bucchi, "Who is this Ben Patti guy? They really don't like him and don't want to promote him at all." (*Id.* at ¶¶ 123–24). Plaintiff confronted Bucchi about this comment on June 15, 2022, and Bucchi explained that the Police Administration had been looking into ways to skip Plaintiff in the captain promotional process despite the fact he ranked third on the Civil Service Exam for Captains. (*Id.* at ¶¶ 157–58). Bucchi further divulged that Assistant Chief Ibarrando stopped communicating with Bucchi about promotions and started communicating directly with Camden County's Resources Department. (*Id.* at ¶ 159).

Additionally, while Plaintiff was on military orders from July 10, 2022 to July 30, 2022, he was notified that he had been transferred to the Human Resources Department which reduced his overall pay by four hours per shift. (*Id.* at ¶¶ 212, 218). Ordinarily a transfer of this nature would only occur when someone was out of work for over 30 days, whereas Plaintiff had only been out of work for 21 days. (*Id.* at ¶ 219).

Plaintiff alleges that Captain Shomo discriminated against and harassed him in various ways from March 2022 to the present. These incidents include denying Plaintiff's vacation request without providing a reason, subjecting Plaintiff to Internal Affairs investigations for trivial matters, failing to honor Plaintiff's approved time-off, assigning Plaintiff the oldest vehicle in the fleet, repeatedly admonishing and reprimanding Plaintiff for trivial matters such as asking questions, forcing Plaintiff to attend mandatory meetings on his days off, reprimanding Plaintiff for providing information too quickly, requiring Plaintiff to produce various "duplicative and unnecessary" reports under time constraints, contacting Plaintiff multiple times about Police Department matters while he was serving military orders from July 10, 2022 to July

4

30, 2022, and requiring Plaintiff to perform Police Department duties while he was serving those orders. (*Id.* at ¶¶ 82–224). Captain Shomo dismissed Plaintiff's concerns about scheduling conflicts due to his concurrent roles in the police department and his military responsibilities and commented that "the Police Department obligations are priority." (*Id.* at ¶ 207).

On October 31, 2022, in response to the incidents detailed above, Plaintiff filed the original complaint in this action, asserting claims against Defendants for discrimination and retaliation under USERRA (Counts I and II) and discrimination and retaliation under NJLAD (Counts III and IV). (ECF No. 1 at ¶¶ 192–236). On November 30, 2022, Plaintiff received a call from Captain Richard Burns to report to Internal Affairs to receive a disciplinary notice. (Compl. at ¶ 231). When Plaintiff met with Captain Burns, he was told he would need to submit to an interview the next day. (*Id.* at ¶ 235). Plaintiff informed Captain Burns that his counsel could only meet remotely. (*Id.* at ¶ 236). Captain Burns would not allow Plaintiff's counsel to appear remotely, nor would he reschedule the interview. (*Id.*). Plaintiff submitted to the interview, which lasted 50 minutes, during which time Captain Burns questioned him about the facts and circumstances described in Plaintiff's civil Complaint. (*Id.* at ¶¶ 241–44). Plaintiff then filed the operative First Amended Complaint on December 19, 2022, which asserts an additional claim for retaliation under CEPA (Count V). (*Id.* at ¶¶ 333–50).

Defendants now move to dismiss (1) the USERRA claims against the individual Defendants; (2) the NJLAD claims against the individual Defendants; and (3) the CEPA claim against all Defendants. Defendants argue that Plaintiff's USERRA claims should be dismissed because only employers and individuals with the power to hire or fire an employee can be subject to liability. (Mot. at 1.) Defendants argue that no individual Defendant meets this requirement aside from Chief Rodriguez, who did not take any adverse action for the purposes of

5

USERRA. (*Id.*). With respect to the NJLAD claims, Defendants maintain that Plaintiff did not allege sufficient facts to show the individual defendants aided and abetted discrimination. (*Id.*). Finally, the Defendants argue they did not take retaliatory action against Plaintiff for purposes of CEPA, therefore, the Court should dismiss the CEPA claims against all Defendants. (*Id.*). Plaintiff concedes that his claims against Defendant Simpson should be dismissed from the Complaint but disputes the dismissal of any other claims. (ECF No. 19 ("Pl. Br.") at 3).

## II.  LEGAL STANDARD

When deciding a motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court limits its review to the face of the complaint. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). The Court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). A complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The inquiry is not whether [a plaintiff] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S.

6

at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id*.

### III. DISCUSSION

#### A. USERRA

Defendants seek to dismiss Plaintiff's USERRA claims of discrimination and retaliation against all individual defendants. (Mot. at 6–7). First, Defendants argue that USERRA's definition of "employer" excludes from liability individuals who do not have the power to hire and fire employees. (*Id.*). Defendants argue that only Chief Rodriguez can unilaterally hire and fire employees, and therefore, the court should dismiss USERRA claims against all other individual defendants. (*Id.* at 7). Second, Defendants argue the Complaint fails to allege any discriminatory conduct by Chief Rodriguez or any adverse employment actions by Chief Rodriguez, and thus fails to state a claim for individual liability under USERRA. (*Id.* at 7–8).

USERRA prohibits an employer from denying "employment, reemployment, retention in employment, promotion, or any benefit of employment" based on an individual's past, present, or future military membership or obligation of service. 38 U.S.C. § 4311(a). "USERRA provisions are construed 'liberally, in favor of the service member[,]' . . . because military service ranks as one of the highest forms of public service a citizen can undertake." *Spadoni v.*

7

*Easton Area Sch. Dist.*, 2009 WL 449108, at *2 (E.D. Pa. Feb. 19, 2009 (citing *Gordon v. Wawa, Inc.*, 388 F.3d 78, 81 (3d Cir. 2004)). When an employer denies an employee a benefit of employment, the employer has violated USERRA if the employee's membership "in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have taken place in the absence of such membership." 38 U.S.C. § 4311(a). USERRA sets forth "a two-step burden shifting framework." *Murphy v. Radnor Twp.*, 542 Fed. App'x 173, 176 (3d Cir. 2013). The plaintiff bears the initial burden of demonstrating that his military service was "a substantial or motivating factor in the adverse employment action." *Id.* at 176. To show an adverse employment action, the plaintiff must allege an action was taken against him that was "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Canete v. Barnabas Health Sys.*, 718 F. App'x 168, 169 (3d Cir. 2018) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)). Once the plaintiff has met this initial burden, the burden shifts to the employer to demonstrate that they would have taken the action regardless of the plaintiff's military membership. *Id.* at 177.

USERRA defines the term "employer" as anyone who "pays salary or wages for work performed" or "has control over employment opportunities," including "a person to whom [an] employer has delegated the performance of employment related responsibilities." 38 U.S.C. § 4303(4)(A)(i). Courts have found individual supervisors liable as "employers" under USERRA, although individual liability applies only to "those individuals who have the power to hire or fire the employee." *Coulson v. Town of Kearny*, 2010 WL 331347, at *7 (citing *Brooks v. Fiore*, 2001 WL 1218448, at *9, n.3 (D. Del. Oct. 11, 2001); see also *Gross v. City of Jersey City*, No. 2019 WL 2120312 at *3 (D.N.J. May 15, 2019).

8

Plaintiff argues the court in *Gross v. City of Jersey City* held that an "employer" under USERRA "encompasses superiors who are within an employee's 'chain of command and ha[ve] the power to recommend major disciplinary actions, terminate or recommend the termination of employees, and oversee[] the Plaintiff's work environment.'" (Pl. Br. at 4) (citing *Gross v. City of Jersey City*, 2020 U.S. Dist. LEXIS 46947, at *8–9 (D.N.J. Mar. 13, 2020)). We encourage Plaintiff to more carefully read the *Gross* court's opinion, in which the court considered and rejected that broad definition of "employer." *Gross*, 2020 U.S. Dist. LEXIS 46947, at *9–10 (dismissing defendants who were alleged to have authority to "recommend the hiring, firing . . . and/or disciplining of employees" because "Plaintiff fails to plead they had the ability to hire and fire[.]"). Because only defendants with the power to "hire and fire" may be held individually liable under USERRA, and Plaintiff does not dispute that Defendants Ibarrondo, Shomo, Moffa, Lutz, May, Diaz, and Burns do not have the power to "hire and fire" him, Plaintiff's USERRA claims are dismissed as to those defendants.

The only remaining individual defendant subject to the USERRA claim is Chief Rodriguez. Plaintiff alleges two specific incidents of discriminatory conduct by Chief Rodriguez, neither of which is sufficient to state a claim of individual liability. First, Plaintiff alleges that Chief Rodriguez failed to timely check on his well-being after a shooting incident occurred outside of his home. (Compl. at ¶¶ 65, 191–98). Plaintiff claims that Chief Rodriguez's failure to check-in after the shooting incident "resulted in an adverse employment action in that Plaintiff was required to take personal time to participate in the investigation." (Pl. Br. at 7). However, the Complaint does not allege that Chief Rodriguez himself required Plaintiff to use personal time due to the shooting incident. (Compl. ¶ 64 ("Defendants . . . made him take a vacation day due to the incident.")). Allegations against the Defendants generally are insufficient to hold Chief

Rodriguez individually liable under USERRA. See *Lopez-Arenas*, 2012 WL 933251, at *8 ("allegations against the 'department' do not demonstrate that" individual supervisors "took any action that adversely affected Plaintiff"). Second, Plaintiff alleges Chief Rodriguez hung up on him during a phone call in which Plaintiff asked for clarification of a question asked by Chief Rodriguez. (Compl. at ¶¶ 196–97). This does not constitute an adverse employment action for purposes of USERRA.

Plaintiff also argues the Complaint alleges sufficient conduct to hold Chief Rodriguez individually liable because he "was among the individuals who are alleged to have been looking for a way to skip Plaintiff in the promotional process." *Id.* at 6–7. Again, the Complaint does not specifically allege that Chief Rodriguez participated in this conduct. The Complaint alleges the Department's HR Supervisor told Plaintiff that "Police Administration" had been looking to skip him in the promotional process. (Compl. at ¶ 158). The supervisor did not specifically identify Chief Rodriguez as a member of the "Police Administration" that was looking to skip Plaintiff in the promotional process. *Id.* Additionally, although the administration may have wanted to skip Plaintiff in the promotional process, Plaintiff was in fact promoted to Captain. *Id.* at ¶ 140. Therefore, the Complaint does not allege that an adverse employment action occurred as a result of the alleged plot to skip him in the promotional process.

Plaintiff further argues that Chief Rodriguez should be held individually liable for the other Defendants' discriminatory actions because "Chief Rodriguez is at the top of the chain of command" and the Complaint's allegations show "a pattern of pervasive discriminatory and retaliatory conduct." (Pl. Br. at 6). Plaintiff's argument evokes the "cat's paw" theory of liability, although the theory is not named in Plaintiff's brief. Based in principles of agency, the cat's paw theory of liability under USERRA allows an employer to be held liable for the discriminatory

conduct of an employee, regardless of whether the employee has power to hire and fire, so long as the employee's discriminatory animus was a "motivating factor in the employer's" decision to take an adverse employment action against the plaintiff. *Staub v. Proctor Hosp.*, 562 U.S. 411, 420–21 (2011). "Rather than providing for individual liability, the cat's paw theory allows actions of individuals to be attributed to the employer." *Miller v. Thomas Jefferson University Hosp.*, 565 Fed. Appx. 88, 91 n.5 (3d Cir. 2014) (citing *Staub*, 562 U.S. at 415). "The employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision." *Staub*, 562 U.S. at 421. However, while CCPD may be held liable under this theory, Chief Rodriguez cannot be held individually liable under the cat's paw theory.

Because Plaintiff failed to allege any discriminatory conduct by Chief Rodriguez or any adverse employment actions as a result of Chief Rodriguez's conduct, and because Chief Rodriguez cannot be held individually liable for the conduct of the other Defendants, we dismiss the USERRA claims against Chief Rodriguez.

### B. NJLAD

Defendants argue the NJLAD claims against the individual defendants must be dismissed because Plaintiff does not allege sufficient facts to create individual liability under the statute. (Mot. at 8). Defendants argue Plaintiff did not make any claims that Defendants Rodriguez, Ibarrondo, Diaz, and Burns participated in discriminatory conduct against Plaintiff based on his military service. *Id.* at 10. Defendants further argue that Defendants May, Moffa, and Lutz cannot be liable under NJLAD because they do not have a supervisory role over Plaintiff. *Id.* at 12–13. Additionally, Defendants argue that Defendant Shomo is not liable under NJLAD because his conduct did not result in an adverse employment action. *Id.* at 13–14.

The NJLAD prohibits employers from discriminating against an individual in "compensation or other terms, conditions, or privileges of employment based on the individual's protected status." N.J.S.A. § 10:5-12(a). Membership in the armed forces is a protected status. N.J.S.A. § 10:5-12(r); *see also* N.J.S.A. § 10:5-3. "To establish a prima facie case of discrimination, a plaintiff must prove: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances that support an inference of discriminatory intent." *Mays v. Toloza*, 2023 WL 110536, at *2 (3d Cir. Jan. 5, 2023) (citing *Victor v. State*, 203 N.J. 383, 408–09 (2010)). It is undisputed that Plaintiff belongs to a protected class and is qualified for his position at CCPD. Therefore, the only disputes are as to whether Plaintiff suffered an adverse action and whether the allegations support an inference of discriminatory intent. "[A]n adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001).

NJLAD does not impose liability on individuals as "employers," but individuals can be liable if they "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or . . . attempt to do so." N.J.S.A. § 10:5-12(e). It is not enough to hold an individual liable "merely because they had some role, or knowledge or involvement." *Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998). "In order for a person to be individually liable under LAD, he must actually intend to facilitate discrimination. . . . In addition, the aider and abettor must be actively involved in the discriminatory conduct." *Jones v. Jersey City Med. Ctr.*, 20 F. Supp. 2d 770, 774 (D.N.J. 1998). While any individual may be liable for aiding and abetting discriminatory conduct by the employer, "a supervisor may be liable for aiding and abetting his

12

or her own conduct." *Ivan v. County of Middlesex*, 595 F.Supp. 2d 425, 463 (D.N.J. 2009) (citing *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 126 (3d Cir. 1999)). A supervisor "may not be liable under the law simply because of mere inaction, passivity or acquiescence," *Jones*, 20 F.Supp. 2d at 774. However, "a supervisor has a duty under New Jersey law to act against harassment, and a supervisor's violation of this duty by either deliberate indifference or affirmative harassment subjects the supervisor to LAD liability." *Cardenas*, 269 F.3d at 268. An individual is considered a supervisor if the individual is either "authorized to undertake tangible employment decisions" affecting the plaintiff or "authorized by [the employer] to direct [the plaintiff's] activities." *Aguas v. State*, 220 N.J. 494, 528 (2015).

"[I]n order to hold an employee liable as an aider or abettor, . . . (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (cleaned up). In *Tarr*, the New Jersey Supreme Court found substantial assistance did not exist because "there was no evidence that [the individual] encouraged any of the wrongful conduct against plaintiff, that he assisted the wrongdoers, or that he was even present when the wrongful conduct occurred" and the record merely showed that a supervisor "negligently supervised his employees." *Id.* at 85.

The Complaint alleges that in March of 2020, Defendant Moffa, who was then a Captain in the CCPD, offered a "quid pro quo" to Plaintiff, who was a Sergeant and thus under the supervision of Moffa. (Compl. at ¶ 47). Plaintiff was serving military orders at the time, and Moffa offered to promote Plaintiff to the position of lieutenant if Plaintiff were to come back early from his military orders. (*Id.*). Plaintiff declined the offer, because "he had no control over

13

changing his military Orders." (*Id.* at ¶ 48). Plaintiff alleges that, in retaliation for not leaving his military orders early, CCPD delayed Plaintiff's promotion to Lieutenant for three more months. (*Id.* ¶ 50). A delayed promotion is a "serious and tangible" adverse employment action because it "alter[s] an employee's compensation." *See Cardenas*, 269 F.3d at 263. We find these allegations are sufficient to state a claim under NJLAD against Moffa for aiding and abetting the CCPD, and himself as a supervisor, in delaying Plaintiff's promotion due to his military service. The allegations create a reasonable inference that the delay in promotion was motivated by Plaintiff's refusal to cut his military service short.

Around September 27, 2021, Plaintiff received military orders to report to full-time duty beginning on October 1, 2021, and continuing until December 31, 2021. (Compl. at ¶ 66). Plaintiff alleges that, after notifying CCPD of the orders, Defendants discriminated against Plaintiff by assigning him to night shifts, despite the fact that he was the most senior lieutenant and the other, less-senior lieutenants received their preferred day shifts. (*Id.* at ¶¶ 69–71). Plaintiff alleges that prior to his departure for his orders, Defendant Lutz, who was then Captain, told Plaintiff that "your time out on [military] Orders with the Army is causing you problems." (*Id.* at ¶ 72). We find these allegations sufficient to find that Plaintiff has plausibly alleged that his assignment to night shifts was caused by Defendant Lutz' discriminatory animus. However, Plaintiff has not alleged an adverse employment action. Assignment to the night shift does not have a tangible effect on compensation, and "[n]ot everything that makes an employee unhappy qualifies as" an adverse employment action. *Corts v. Univ. of Med. and Dentistry of New Jersey*, 391 F.Supp. 2d 298, 312 (D.N.J. 2005); *see also Fitzgerald v. Shore Memorial Hosp.*, 92 F.Supp.3d 214, 241 (D.N.J. 2015) (assignment of nurse to "more challenging patients" does not constitute adverse employment action).

14

On February 9, 2022, Plaintiff asked Lutz for a schedule adjustment in order to accommodate his military orders that weekend. (Compl. ¶ 78). Plaintiff had given CCPD six months' notice of the military orders. (*Id.*). Lutz denied the request, telling Plaintiff, "I can't do that, the military is just too much." (*Id.* ¶ 79). Instead, Lutz told Plaintiff that he needed to use personal time in order to cover the missed shift. (*Id.* ¶ 81). Because Plaintiff's terms of compensation – use of personal time – was adversely affected by Lutz's decision to deny the request, and because Plaintiff plausibly alleged the decision to deny the request was due to discriminatory animus, these allegations are sufficient to state a claim against Lutz for aiding and abetting CCPD, and himself as supervisor, under NJLAD.

Plaintiff argues Assistant Chief Ibarrondo, Deputy Chief Shomo, and Lieutenants May, Diaz, and Captain Burns violated NJLAD because each of these defendants "personally engaged in discriminatory and retaliatory actions against [Plaintiff] based on his military service." (Pl. Br. at 8). Plaintiff alleges these defendants participated in several baseless and unjustifiable Internal Affairs investigations against Plaintiff, and that these baseless investigations were conducted in retaliation for Plaintiff's military service. (*Id.* at 8–9). The Complaint alleges Ibarrondo directed May, Diaz, and Burns to investigate time spent by Plaintiff smoking outside in retaliation for Plaintiff's military service. (Compl. ¶¶ 103–112). The Complaint also alleges that Shomo falsely accused Plaintiff of failing to send a required notification text message, and that Shomo did so in order to harass Plaintiff for his service in the military. (*Id.* ¶¶ 97–99). The false accusation resulted in two interviews with internal affairs. (*Id.* ¶¶ 100, 102). Plaintiff alleges Defendant May told him that he did not know why the investigation against Plaintiff was happening, which Plaintiff argues permits the inference that the investigation was pretextual and based solely on discriminatory intent. (Pl. Br. at 9).

15

However, defendants cannot be held individually liable under NJLAD merely for conducting an investigation, unless that investigation results in some further adverse action, such as suspension. *Spinks v. Twp. of Clinton*, 402 N.J. Super. 465, 485–86 (App. Div. 2008) ("An employer must be free to investigate complaints of employee misconduct without fear of LAD liability. Only when the investigation results in some real detriment, such as a suspension, demotion, or termination, should the aggrieved employee be able to invoke the protection of the LAD."). The Complaint does not allege that these internal investigations resulted in a suspension, demotion, or termination, or any other "real detriment," and Plaintiff does not cite any case law supporting his position that defendants can be held individually liable under NJLAD merely for conducting an internal investigation.

Plaintiff cites *Green v. Jersey City Board of Education* for the proposition that even where "relatively minor instances of behavior directed against an employee" would not be individually actionable under NJLAD, when combined they may "make up a pattern of retaliatory conduct." 177 N.J. 434, 448 (2003). However, the *Green* decision related to a CEPA claim against the Board of Education itself, not individual defendants, and therefore does not support Plaintiff's argument that these individual defendants can be held liable for aiding and abetting under NJLAD.

Moreover, Plaintiff has failed to plead facts that would show Defendants Ibarrondo, Shomo, May, Diaz, and Burns "actually intend[ed] to facilitate discrimination," as required to establish liability for aiding and abetting. *Jones*, 20 F. Supp. 2d at 774. Unlike the allegations as to Defendants Moffa and Lutz, the Complaint does not allege that Defendants Ibarrondo, Shomo, May, Diaz, and Burns made any discriminatory statements regarding Plaintiff's service in the military, nor does the Complaint allege that these Defendants were even aware of any

16

discriminatory animus against Plaintiffs due to his military service. Because Plaintiff has failed to allege Defendants Ibarrondo, Shomo, May, Diaz, and Burns had discriminatory intent or caused an actionable adverse employment action, we find Plaintiff has failed to state a claim against these defendants for aiding and abetting under NJLAD.

As to Defendant Rodriguez, while the Complaint does not allege Rodriguez himself engaged in discriminatory conduct, Plaintiff argues we should not dismiss the NJLAD claim against him because, as head of the chain of command, the decisions to obstruct Plaintiff's promotion and other discriminatory decisions "could not have been made without Chief Rodriguez's knowledge and approval." (Pl. Br. at 10). However, Plaintiff does not allege that Rodriguez was aware of any discriminatory intent behind these decisions, nor does Plaintiff allege facts that support an inference that Rodriguez himself held discriminatory animus against Plaintiff. At best, Plaintiff's allegations support finding Rodriguez "negligently supervised his employees," which is insufficient to create individual liability for aiding and abetting discrimination. *Tarr*, 181 N.J. at 85. Because Plaintiff has failed to allege facts showing Defendant Rodriguez intended to facilitate discrimination, we will dismiss the NJLAD claim against him.

In sum, the Complaint pleads sufficient facts to state a claim against Defendants Moffa and Lutz for aiding and abetting under NJLAD. However, the Complaint fails to plead sufficient facts as to Defendants Rodriguez, Ibarrondo, Shomo, May, Diaz, and Burns. The NJLAD claims against those defendants only are dismissed.

### C. CEPA

Finally, Defendants move to dismiss the CEPA claim against all Defendants because the actions taken by the Defendants do not qualify as adverse employment actions under CEPA.

(Mot. at 16). Under the New Jersey Conscientious Employer Protection Act (CEPA), an employer may not take any retaliatory action against an employee because the employee participates in an investigation or inquiry into any violation of law by the employer. N.J. Stat. Ann. § 34:19-3. This law is intended to protect "whistle-blowers" who believe the organization is involved in illegal or unethical activity. *Lippman v. Ethicon*, Inc., 222 N.J. 362, 378 (2015). A plaintiff must demonstrate four elements to establish a prima facie case under CEPA:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
> (2) he or she performed whistle-blowing activity described in [CEPA];
> (3) an adverse employment action was taken against him or her; and
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Id.* at 380.

Defendants argue Plaintiff fails to allege an "adverse employment action" as required under the third element. (Mot. at 19). CEPA defines "retaliatory action" as "discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. § 34:19–2(e). Retaliatory actions under the CEPA must have impact "on the employee's compensation or rank or be virtually equivalent to discharge." *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 241 (3d Cir. 2016) (quoting *Caver v. City of Trenton*, 420 F.3d 243, 255 (3d Cir. 2005)).

Plaintiff alleges that Defendants retaliated against him for filing the original complaint in this action by subjecting him to a "pretextual" Internal Affairs investigation in the absence of Plaintiff's counsel. (Pl. Br. at 13). However, investigations by Internal Affairs do not qualify as adverse actions under CEPA. *Fraternal Ord. of Police, Lodge 1*, 842 F.3d at 241–42 (finding that a visit by internal affairs does not qualify as an adverse action under CEPA). Plaintiff does not

18

allege that Defendants reduced his compensation, lowered his rank, or took actions equivalent to a discharge. Therefore, Plaintiff fails to satisfy the third element of a CEPA claim and we grant dismissal of the Complaint's CEPA claim against all Defendants.

### IV.    CONCLUSION

For the reasons expressed above, the Court grants Defendants' motion to dismiss all claims against Defendant Simpson. The motion to dismiss Counts I and II as to Defendants Rodriguez, Ibarrondo, Shomo, Moffa, Lutz, May, Diaz, and Burns is granted. The motion to dismiss Counts III and IV as to Defendants Moffa and Lutz is denied. The motion to dismiss Counts III and IV as to Defendants Rodriguez, Ibarrondo, Shomo, May, Diaz, and Burns is granted.  The motion to dismiss Count V against all Defendants is granted. An Order follows.


Dated:  8/1/2023                                        s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge